# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 06-3801

_____

United States of America,            *
                                     *
              Appellee,              *
                                     *
      v.                             *      Appeal from the United States
                                     *      District Court for the
James Edward Lewis,                  *      Southern District of Iowa.
                                     *
              Appellant.             *
                                     *
                                     *

_____

Submitted: April 13, 2006
Filed: April 26, 2007

_____

Before MELLOY, BOWMAN and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

A jury convicted James Edward Lewis of two counts of bank robbery, both in violation of 18 U.S.C. § 2113(a), and one count of possession of a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A). Lewis appeals, arguing that the district court[1] erred in denying his motion to suppress DNA

_____

[1]The Honorable Ronald E. Longstaff, then Chief Judge, United States District Court for the Southern District of Iowa.

evidence obtained without an opportunity to consult with counsel and abused its discretion by admitting evidence of his prior state bank robbery conviction at trial. We affirm.

## I.    BACKGROUND

This case stems from three bank robberies that were committed within six months of each other. According to eyewitnesses, Bank of America in Urbandale, Iowa, was robbed in February 2004 by a man wearing dark gloves and a plaid scarf that completely covered his face. He threatened the teller with a gun and forced her to place money into his bag. The robber left the bank with the bag, entered the passenger side of a vehicle waiting for him outside the bank and fled. In July 2004, West Bank in Urbandale was robbed by a man wearing a mask, gloves, white tennis shoes and a helmet that completely covered his face. He threatened the teller with a "western-style" gun and forced her to place money into his bluish-green bag. The robber fled on a bicycle. Finally, in August 2004, the River City Community Credit Union in Davenport, Iowa, was robbed by a man wearing gloves, a black mask and a blue windbreaker with the hood pulled up over his head. The man threatened the River City teller with a gun, forcing her to put money into his bag. The robber fled on a bicycle. During the investigation of the three robberies, authorities recovered several clothing items believed to be worn by the robber.

Iowa state authorities arrested Lewis for the River City Community Credit Union robbery and charged him with first-degree robbery. Pursuant to an order issued by the Iowa District Court for Scott County, state authorities collected a buccal swab from Lewis for DNA analysis. Prior to the buccal swab, Lewis was not given the opportunity to contact an attorney. The results from the buccal swab revealed that Lewis's DNA matched the DNA found on a pair of gloves recovered from outside the credit union. Lewis was subsequently convicted for the River City Community Credit Union robbery in Scott County, Iowa ("Scott County conviction").

Federal investigators used the buccal swab results obtained by the Iowa authorities and found that Lewis's DNA matched that found on clothing items recovered during the investigation of the Bank of America and West Bank robberies. A federal grand jury indicted Lewis on two counts of bank robbery, one count each for the Bank of America and West Bank robberies, and one count of possession of a firearm in furtherance of a crime of violence, relating to the West Bank robbery.

Prior to trial, Lewis filed a motion to suppress the DNA test results obtained from his buccal swab arguing that the collection of the swab violated Iowa law and his Sixth Amendment right to counsel. The district court held a hearing and denied his motion. Lewis also filed a motion in limine seeking to prevent the Government's introduction of his Scott County conviction arguing that it was improper character evidence. The Government argued that it was admissible under Federal Rule of Evidence 404(b) to prove identity because the characteristics of the three robberies established a pattern. The district court did not rule on the motion prior to trial, but it allowed the conviction into evidence over Lewis's objection. At that time, the district court instructed the jury that the Scott County conviction was being admitted for the sole purpose of identity and could not be used as evidence of criminal disposition. The jury convicted Lewis on all three counts. The district court sentenced him to 180 months' imprisonment on each of the bank robbery charges, to be served concurrently, and 84 months' imprisonment for the firearm charge, to be served consecutively. Lewis appeals the district court's denial of his motion to suppress the buccal swab evidence, alleging a violation of Iowa Code § 810.12(2) and the Sixth Amendment, and its admission of his Scott County conviction, alleging a violation of Rule 404(b).[2]

---

[2]Lewis also raised an ineffective assistance of counsel claim. "In general, an ineffective assistance of counsel claim is not cognizable on direct appeal. Instead, such a claim is properly raised in a 28 U.S.C. § 2255 action. We will consider an ineffective assistance of counsel claim on direct appeal only in exceptional cases where the district court has developed a record on the ineffectiveness issue or where

## II.    DISCUSSION

In his first claim, Lewis argues that the district court erred in denying his motion to suppress the buccal swab evidence because it was collected before he was afforded a reasonable opportunity to consult with counsel.  We review the district court's conclusions of law regarding a motion to suppress de novo and its fact findings for clear error.  *United States v. Sanders*, 424 F.3d 768, 772-73 (8th Cir. 2005).

The right to counsel under the Sixth Amendment applies only to "critical stages" of the proceedings against the defendant.  *United States v. Wade*, 388 U.S. 218, 224-25 (1967).  Critical stages may include, among other things, post-indictment line-ups, *Kirby v. Illinois*, 406 U.S. 682, 690 (1972), arraignment, *Hamilton v. Alabama*, 368 U.S. 52, 53 (1961), and entering a plea, *White v. Maryland*, 373 U.S. 59, 60 (1963), but do not include the taking of handwriting exemplars, *Gilbert v. California*, 388 U.S. 263, 267 (1967).  It is clear that scientific analyses of evidence such as "fingerprints, [a] blood sample, clothing, hair and the like . . . are not critical stages since there is minimal risk that his counsel's absence at such stages might derogate from his right to a fair trial."  *Wade*, 388 U.S. at 227-28.  "The denial of a right to have [the defendant's] counsel present at such analyses does not therefore violate the Sixth Amendment . . . ."  *Id*. at 228; *see also South Dakota v. Neville*, 459 U.S. 553, 559 n.8 (1983); *Schmerber v. California*, 384 U.S. 757, 765-66 (1966); *Freeman v. Jackson*, 107 F.3d 875 (8th Cir. 1997) (unpublished table decision) (holding that defendants have no right to consult with counsel prior to giving blood and saliva samples) (citing *Neville*, 459 U.S. at 559 n.8; *Schmerber*, 384 U.S. at 765-66).  Accordingly, we hold that the collection of the buccal swab and the

---

the result would otherwise be a plain miscarriage of justice."  *United States v. Hernandez*, 281 F.3d 746, 749 (8th Cir. 2002) (internal citation and quotation omitted).  Because neither exception applies here, we decline to address Lewis's ineffective assistance of counsel claim at this time.

Government's subsequent use of the DNA results did not violate Lewis's Sixth Amendment right to counsel. *See Wade*, 388 U.S. at 228.[3]

Lewis also claims that the collection of the buccal swab violated an Iowa statute that provides, "the court shall . . . afford a reasonable opportunity for the person to consult with a lawyer" prior to the administration of a buccal swab. Iowa Code § 810.12(2). "We have consistently held that evidence obtained in violation of a state law is admissible in a federal criminal trial if the evidence was obtained without violating the Constitution or federal law." *United States v. Padilla-Pena*, 129 F.3d 457, 464 (8th Cir. 1997). Having concluded that Lewis's Sixth Amendment right to counsel was not violated by the collection of the buccal swab and in light of the fact that Lewis does not argue that the collection violated any other provision of federal law, we reject Lewis's argument that the DNA results must be suppressed in the federal prosecution because the collection of the buccal swab may have violated Iowa Code § 810.12(2). *See id*. Therefore, the district court's denial of Lewis's motion to suppress the buccal swab evidence is affirmed.[4]

In his second claim, Lewis asserts that the district court abused its discretion in admitting the Scott County conviction under Rule 404(b). "We review [the district court's] Rule 404(b) decision for abuse of discretion and reverse only when such evidence clearly had no bearing on the case and was introduced solely to prove the defendant's propensity to commit criminal acts." *United States v. Almendares*, 397

[3]Lewis characterizes the *Wade* and *Schmerber* decisions as "incorrect" and asks this court to deviate from them. Even if we were so inclined, which we are not, we would be without power to do so. *See United States v. Cutshall*, 75 F.3d 426, 429 (8th Cir. 1996) ("We, however, remain bound by the Supreme Court and our prior precedent.").

[4]We also reject Lewis's invitation for us to overrule *Padilla-Pena* because we are "not at liberty to overrule a decision of another panel." *United States v. Prior*, 107 F.3d 654, 660 (8th Cir. 1997).

F.3d 653, 661 (8th Cir. 2005) (internal citation and quotation omitted). "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as . . . identity." Fed. R. Evid. 404(b). "[W]here the pattern and characteristics of the crimes [are] so unusual and distinctive as to be like a signature, evidence of a defendant's prior crimes is admissible to prove that it was indeed the defendant that committed the charged crime." *United States v. Carroll*, 207 F.3d 465, 468 (8th Cir. 2000) (internal citation and quotation omitted).

In this case, we need not decide whether the district court abused its discretion in admitting the Scott County conviction because we conclude that even if it were error, it would be harmless. *See* Fed. R. Crim. P. 52(a); *United States v. Red Bird*, 450 F.3d 789, 793 (8th Cir. 2006). "An evidentiary error, such as this one, is harmless if, after reviewing the entire record, we determine that the substantial rights of the defendant were unaffected, and that the error did not influence or had only a slight influence on the verdict." *Carroll*, 207 F.3d at 470; *accord* Fed. R. Crim. P. 52(a). Further, "[i]mproper admission of evidence which is cumulative of matters shown by admissible evidence is harmless error." *United States v. Triplett*, 104 F.3d 1074, 1079 (8th Cir. 1997).

The Government presented testimony from a Bank of America teller establishing that the robber wore a plaid scarf that completely covered his face, used a gun to threaten the teller, and had a bag to carry the money. When the robber left the bank, the bank manager observed him get into a vehicle and noted its license plate number. Later, the police found a car with matching plates that the bank manager identified as the getaway vehicle used by the robber. The police also found a plaid scarf inside the vehicle that the bank teller identified as the one worn by the robber. The West Bank teller testified that the robber wore a helmet, mask and gloves, carried a bag in which to put the money, and threatened her with a western-style gun. The bank manager observed the robber leave on a dark-colored bicycle. The police

recovered a blue bike and a helmet approximately two blocks from the bank and a revolver approximately two miles from the bank. The bank teller and bank manager both identified the revolver as looking like the one used in the robbery. The bank teller also identified the helmet as looking like the one worn by the robber. On the same day as the West Bank robbery, Lewis went to his insurance office with a "big wad of money" and paid his $500 premium. Finally, and most importantly, the Government presented evidence that Lewis's DNA was found on the plaid scarf and bike helmet, both of which were identified by eyewitnesses. Because the results of the test indicated that fewer than one out of a hundred billion individuals would be expected to have the same DNA profile, the Government's expert testified that the DNA found on the recovered clothing items "could only have come from James Edward Lewis or an identical twin."

The Government's highly probative DNA evidence was used to establish the identity of the robber. The Scott County conviction was introduced for the same purpose, identity, and the jury received an instruction from the district court explaining as much. In light of our holding that the district court properly admitted the DNA evidence, it follows that the Scott County conviction was "cumulative of [a] matter[] shown by admissible evidence." *See Triplett*, 104 F.3d at 1079. Moreover, in light of the strength of the Government's evidence supporting the conviction, we do not believe that the admission of the Scott County conviction affected Lewis's substantial rights or influenced the verdict. Therefore, the admission of the Rule 404(b) evidence, even if erroneous, was harmless. *See id.*

## III.   CONCLUSION

Accordingly, we deny Lewis's request for a new trial and affirm the judgment of the district court.

_____